UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **SENTENCING MEMORANDUM**

     v.                                                    **23-CR-75-RJA**

COREY BEASLEY,

              Defendant.
_____


## I.        Preliminary Statement

For the past 19 months, Corey Beasley has embodied the adage "Making your mess your message."  Since he was arrested, Corey has made admirable strides in his own rehabilitation and expressed a sincere understanding of the damage and hurt he has caused to others by his actions.  Prior to this offense Corey had never been arrested before and had no criminal history.  Corey is deeply ashamed and remorseful for his actions. See **Exhibit A**.  However, this past year and a half, he has proven, even in the midst of struggles with severe mental illnesses, that when given the opportunity, he is able to lead a fulfilling life. Corey's personal struggles with mental health, the challenges he faces in coming to terms with the harm his conduct has caused, and the difficult experiences he faces in prison led Corey to the lord in earnest so that he may share meaningful message with others.  In addition to his ministry, he draws and makes greeting card for other inmates often to inspire, connect, or provide support to those facing similar situations.





As the Court can see from the 219 certifications of courses he has completed while incarcerated at the Niagara County Jail (see **Exhibit G**) and his acceptance to the International Christian College and Seminary shown below and attached hereto as **Exhibit H**, Corey has whole heartedly dedicated himself to his ministry studies.  In his sincere remorse for his actions, Corey committed his life to rehabilitation in hopes that someday he can have redemption and reconciliation with his family and his community.



## INTERNATIONAL CHRISTIAN COLLEGE and SEMINARY
Colegio Biblico Internacional y Seminario

October 11, 2024

Corey Beasley #152221
Niagara County Jail
PO Box 496
Lockport, NY 14095-0496

Dear Corey,

On behalf of the entire staff, I want to congratulate you on your recent choice to attend International Christian College and Seminary. Your success in our program is important to us because we are dedicated to ensuring that you fulfill God's calling in your life.

You are now a member of an engaged academic community of learners and professionals, all who are here to help you excel spiritually, academically, and professionally. What does this mean? It means that spiritually, we are dedicated to your personal growth in Christ; academically, we will keep you focused on your goals; and professionally, we will do all we can to ensure a smooth transition from one aspect of your life to the next. You are not alone in this journey. Once the college has received your down payment and your contract, you are considered an official seminary student and may begin classes. As soon as the college receives your completed course assignments, your next course assignment will be sent shortly thereafter. Your prison number is your student ID number.

Corey Beasley is before the Court for sentencing after pleading guilty on March 12, 2024, to one count of Receipt of Child Pornography in violation of 18 U.S.C. §

2252A(a)(2)(A) which occurred on or about September 14, 2022. He has been in custody for almost 20 months.  In the Plea Agreement, the parties agreed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the Court at the time of sentencing impose a 180-month term of imprisonment. Dkt. No. 36, Plea Agreement at ¶ 19. A Pre-Sentence Report ("PSR") was filed on August 1, 2024, and revised November 18, 2024, setting forth a recommended advisory Guidelines sentencing range at 240 months. Dkt. Nos. 48 and 59 - PSR at ¶ 69. For the reasons set forth below, the defense respectfully requests a sentence of 180 months consistent with the as a sentence that as sufficient but not greater than necessary under the facts and circumstances of this case. Sentencing in this case is currently scheduled for December 9, 2024.

I respectfully submit the following sentencing memorandum and exhibits for the Court's consideration at sentencing.

| | |
|---|---|
| **Exhibit A** | Letter of Acceptance from Corey Beasley |
| **Exhibit  B** | Letter from Alexander Beasley |
| **Exhibit C** | Letter from Marg Beasley |
| **Exhibt D** | Letter from Daniel Felgentreff |
| **Exhibit E** | Letter from Shauana Felgentreff |
| **Exhibit F** | Certificates of Completion for Good News Jail & Prison Ministry |
| **Exhibit G** | Certificates of Completion of Course work and transcripts |
| **Exhibit H** | Letter of Acceptance from the International Christian College and Seminary |
| **Exhibit I** | Drawings by Corey Beasley |

## II.    Sentencing Procedure and 18 U.S.C. § 3553(a) Factors

In a series of cases beginning with *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment and that moving forward, the Guidelines were to be treated as "advisory."  While a sentencing court must still correctly calculate the Guidelines range in each case, it may not treat that range as mandatory. *Gall v. United States*, 552 U.S. 38, 49-51 (2007);  *Nelson v. United States*, 555 U.S. 350, 352 (2009).  Rather, the Guideline range is merely "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).


In rendering a sentence, a court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing.  *Gall*, 552 U.S. at 49-50, 53-60.  A court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough*; 552 U.S. at 101; *United States v. Pepper*, 131 S. Ct. 1229, 1242-43, 179 L.Ed.2d 196 (2011).  These goals are retribution, deterrence, incapacitation, and rehabilitation.  18 U.S.C. § 3553(a)(2).

A critical Supreme Court directive designed to ensure that the guidelines are truly advisory is the authority of this Court to disagree with a particular guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United*

*States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations")); *see also Spears v. United States*, 555 U.S. 261, 266-67 (2009).

After determining the advisory Guidelines range as a "starting point" and "initial benchmark," *Gall*, 128 S. Ct. at 596, the sentencing court must then consider any applicable Guidelines departure. The Supreme Court in Gall rejected the "rigid use of a mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." 552 U.S. at 47. A "departure" is a downward adjustment to the final sentencing range specifically sanctioned by the Guidelines themselves. It is frequently triggered by a prosecutor's request to reward cooperation or by other factors that take the case "outside the heartland" of cases or defendants contemplated by the Sentencing Commission. Although the Sentencing Guidelines are now advisory, the Court in its initial guideline calculation is still required to look at permissible downward departures when calculating a sentence. *See, e.g., United States v. Galante*, 111 F.3d 1029, 1036 (2d Cir. 1997); *United States v. Ekhator*, 17 F.3d 53 (2d Cir. 1994); *United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992).

Lastly, the Court must then consider all of the 18 U.S.C. § 3553(a) factors to determine whether a variance – a sentence outside the advisory guideline system – is warranted. A "variance" occurs when a judge imposes a sentence above or below the otherwise properly calculated sentencing range based upon the application of the other statutory factors in 18 U.S.C. §3553(a). While district courts must continue to base departures on guideline factors, "many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court—with greater latitude—under section 18 U.S.C. § 3553(a)."

*18 U.S.C. § 3553 (a) FACTORS*

As noted above, after the Court calculates the advisory Guidelines, the Court must ultimately impose a sentence that is consistent with 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a) mandates the court to impose a sentence that is "sufficient, but not greater than necessary" to meet the purposes of sentencing, a directive commonly referred to as the "parsimony clause." *United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007). The parsimony clause requires a sentencing court to impose the lower of two sentences when either of the two potential sentences would properly serve the statutory purposes of retribution, deterrence, incapacitation, or rehabilitation. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). The § 3553(a) factors to be considered when imposing a sentence are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with the needed. . . training or . . . treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

   (A) the applicable category of offenses committed by the applicable category of defendant as set forth in the Guidelines . . .;

7

(5) any pertinent policy statement. . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar

    records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

    Under §3553(a), the sentencing judge is permitted to find any relevant facts appropriate for determining a sentence, whether or not that sentence is within or outside the advisory Guidelines range.

    For the reasons set forth below, a non-guideline sentence of time served is a sentence which will be sufficient, but not greater than necessary, consonant with the purposes of sentencing as statutorily set forth in Title 18 United States Code §3553.

### III.    History and Characteristics of Mr. Beasley

    Corey Beasley has a strong support system and is a dedicated father to his two young sons. The instant offense is Corey's only criminal conduct.  (Dkt. Nos. 48 and 59).  This offense conduct which exacerbated by significant mental health issues is an aberration in Corey's otherwise law-abiding life. Corey Beasley was born in Nashua, New Hampshire, but spent most of his life in Albany, New York. Dkt. Nos. 48 and 59, PSR ¶ 86. Corey Beasley lived with both of his parents until the age of 12 when his parents separated. *Id*. at ¶ 89. Growing up, Mr. Beasley's mother worked in a high school cafeteria and his father was a commercial truck driver. *Id*. at ¶ 87. When he was 17 years old, Corey went out on his own when moved out of his mother's home but has maintained very close relationships with both of his parents—he speaks to both his mother and father weekly over the phone. *Id*. at ¶¶ 87-89. His parents have remained very supportive of Corey throughout the duration of this case and have been there to help his family during this very difficult

time. Corey has two older half-brothers, Henry and William, both of whom he continually tries to maintain relationships with despite recent strains. *Id*. at ¶ 88.

In 2015, Corey began experiencing significant and severe mental health issues. On March 12, 2015, he was admitted to the Albany Medical Center for "symptoms associated with anxiety" and "concern for self-harm." *Id*. at ¶ 94. After this incident, Corey was prescribed Klonopin and Buspirone to treat his anxiety. *Id*. Just 10 days later, he was admitted to the hospital again for similar symptoms and "onset chest pressure radiating to the left scapula." *Id*. Despite these substantial mental health struggles, Corey maintained consistent employment and been a primary caregiver for his 10-year-old twin boys.

Corey Beasley has consistently held a variety of jobs to provide for his family. After working toward his GED, Mr. Beasley earned an associate degree from the ITT Technical Institute in Albany. *Id*. at ¶¶ 100-101. Since then, Mr. Beasley has held positions as link builder with Internet Marketing Ninjas, a general laborer with Tradesman International, as well as various contract positions through platforms such as Instacart, Door Dash, Uber, and Lyft. *Id*. at ¶¶ 102-107.

Corey is a dedicated father to his twin boys. Corey maintains regular contact with them during his incarceration and sends them drawings such as the one below and attached as **Exhibit I** to them to brighten their day and encourage them while they deal with his absence.



Corey Beasley's father described in his letter of support how Corey helps his young sons with their homework, he brings them to hockey practice, and even helped them set up a lemonade stand to learn about saving money. *See* **Exhibit B**. Mr. Beasley's uncle, Daniel Felgentreff, described that Mr. Beasley's "boys are his whole world. He loves those boys more than life itself." **Exhibit C**. Shauna Felgentreff described Mr. Beasley as "a talented artist, an avid reader, a good friend and loves to play hockey. But closest to his heart are his twin sons. They mean everything to him." **Exhibit D**. Since his incarceration for the instant offense, Mr. Beasley has prioritized maintaining a presence in his sons' lives. Mr. Beasley sends the boys letters and speaks to them on the phone weekly. PSR at ¶ 91. However, the physical distance away from his sons has been incredibly difficult with Mr. Beasley being held in Niagara County and his sons in Albany, New

York. Mr. Beasley's support system has noted the critical point his sons are at and how important it is that they have consistent contact with their father. *See* **Exhibit C** and **Exhibit D**. In addition, Mr. Beasley's loved ones have expressed that maintaining consistent contact with his sons will help Mr. Beasley on his path to healing and becoming a better man. *Id*.

In addition to maintaining contact with his sons, Mr. Beasley has received over 100 certificates on various topics while incarcerated. *See* **Exhibit D** and **Exhibit E**. Mr. Beasley was first incarcerated for the instant offense in the spring of 2023, and shorty after he began taking Bible Correspondence Courses through Good News Jail & Prison Ministry. *See* **Exhibit D**. Mr. Beasley consistently completed these Bible courses from August 2023 through February 2024 when he completed the entire course. *Id*. After finishing the Bible course, Mr. Beasley began taking courses through Edovo, completing courses such as "Learning How to be a Better Parent," "Beyond Prison, Probation, and Parole," "Developing Your Emotional Intelligence," and "How Do I Change." *See* **Exhibit E**. Mr. Beasley's loved ones have observed his dedication to these courses and to bettering himself in general. Shauna Felgentreff noted that Mr. Beasley "wants to get counseling and do whatever he can to ensure he comes back to society a better man. He is motivated to learn new ways and to do whatever it takes to right his wrong as much as possible." **Exhibit C**.

## IV.    Instant Offense and Acceptance of Responsibility

The need for punishment in this case is adequately addressed with the requested 180-month sentence.  Corey is incredibly remorseful for the pain he has caused his family and is committed to treating his mental health "so he can determine the root cause of his actions." See **Exhibit A**, and PSR at ¶ 45. While incarcerated, Mr. Beasley has been working through courses on topics ranging from parenting skills to overall self-improvement. *See* **Exhibit D** and **Exhibit E**. Through

11

this difficult time, Mr. Beasley's support system has remained by his side and knows that he "is sorry for his actions and committed to getting help and learning how to be a better man." **Exhibit B**. Mr. Beasley expressed immense remorse for his actions when interviewed by the U.S. Probation Office, in which Probation noted how Mr. Beasley's remorse was focused "on the hurt and damage he placed on [the minor victim]." PSR at ¶ 45. Specifically, Mr. Beasley described how "he did not recognize the person who committed the instant offense" and desires "to seek sex offender treatment while incarcerated." *Id*. Accordingly, the Probation Office issued a two-point reduction in Mr. Beasley's total offense level for acceptance of responsibility. *Id*. at ¶ 57.

## V.    Conclusion

Corey has shown genuine remorse, the ability to be rehabilitated, and the desire and dedication to become a better person.  He has shown that the punishment he has already endured has motivated significant personal development and he has proven to the Court an ability to successfully reintegrate into society after completion of this very lengthy sentence. A 180 month sentence that sufficiently serves the purposes of sentencing while still affording Corey the opportunity to manage his mental health, reenter society to be able to meaningfully contribute to his community and his family.

For all these reasons, the defense respectfully requests that the Court sentence Mr. Beasley to a sentence to of 180 months of imprisonment, consistent with what the parties agreed to in the Plea Agreement. This sentence reflects the nature and circumstances of Mr. Beasley's offense, his history and characteristics, his sincere remorse and substantial steps toward rehabilitation, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). Such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**DATED:**     November 25, 2024
              Buffalo, New York

                              Respectfully submitted,


                              **/s/Fonda Dawn Kubiak**
                              Fonda Dawn Kubiak
                              Assistant Federal Public
                              Defender Federal Public
                              Defender's Office 300 Pear
                              Street, Suite 200 Buffalo, New
                              York 14202
                              (716) 551-3341; 551-3346 (fax)
                              fonda_kubiak@fd.org
                              *Attorney for Corey Beasley*


**TO:**   Caitlin Higgins
          Assistant United States Attorney